1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                              DISTRICT OF NEVADA

8                                      * * *
                                        )
9   ANGELA ANDREWS                      )
                                        )
10            Plaintiff,                 )            3:07-CV-00336-LRH-RAM
                                        )
11  v.                                  )
                                        )            ORDER
12  DEPARTMENT OF HUMAN RESOURCES,      )
    STATE OF NEVADA, et al.,            )
13                                      )
              Defendants.               )
14  _____  )

15          Presently before the court is Defendants State of Nevada, Department of Human Resources,

16  Michael Willden, and Vicki Pratt's Motion for Summary Judgment (#25[1]).  Plaintiff Angela

17  Andrews has filed an opposition (#28) to which Defendants replied (#36).

18  I.      Facts and Procedural History

19          This is a civil action brought for alleged violations of the Family and Medical Leave Act

20  ("FMLA"), 29 U.S.C. § 2611 *et seq.*  At all relevant times to this case, Plaintiff was employed with

21  the State of Nevada, Department of Health and Human Services, Division of Welfare and Support

22  Services, as a Family Services Specialist.  Family Services Specialists handle cases involving a

23  variety of welfare programs, including food stamps, Temporary Assistance for Needy Families

24  ("TANF"), and many others.  The cases involving TANF are the most time-consuming, as they are

25

26  _____

            [1] Refers to the court's docket number.

1  more complex and require more extensive interviewing and paperwork.  Until July of 2007,

2  Plaintiff worked in the Winnemucca, Nevada office.

3       In November of 2004, Plaintiff was diagnosed with a serious medical illness.[2]  On March

4  28, 2005, as a result of her illness, Plaintiff requested intermittent leave under the FMLA.

5  Defendants granted the intermittent leave.  In 2005, Plaintiff took four days off of work pursuant to

6  the FMLA intermittent leave.  In 2006, Plaintiff took an additional forty-six days off of work

7  pursuant to the FMLA intermittent leave.  In 2007, she took an additional eighteen days off of work

8  pursuant to the FMLA intermittent leave.

9       On July 24, 2006, Plaintiff requested leave under the FMLA due to her father's heart

10  surgery.  Defendants granted the leave, and Plaintiff was away from work from July 20, 2006,

11  through August 4, 2006.  In July of 2007, Plaintiff again requested leave under the FMLA to care

12  for her father.  Defendants granted her request, and Plaintiff was on leave from July 16, 2007,

13  through August 6, 2007.

14       In addition to the above-described leave, in 2005, Plaintiff used 137.5 hours of sick leave.

15  In 2006, she used 364.25 hours of sick leave, and in 2007, she used 245 hours of sick leave.

16       At the end of March and into early April of 2006, Plaintiff took a week of vacation.

17  Plaintiff briefly returned to work from April 3 until April 6.  At that time she again left work,

18  taking three weeks of FMLA leave.  When Plaintiff began her FMLA leave in April of 2006,

19  Plaintiff's supervisor, Defendant Vicki Pratt ("Pratt"), asked Plaintiff to provide a doctor's note

20  verifying that medical leave was needed.  Because Pratt was unsure whether FMLA leave required

21  a doctor's note, she told Plaintiff that she would find out and get back to her.  In the meantime,

22  Plaintiff requested and received a note from her doctor.  The next day, Pratt informed Plaintiff that

23  a doctor's note was not necessary.

24       On April 26, 2006, Pratt issued Plaintiff a "negative case review."  The negative review

25  _____

26      [2] Defendants do not dispute that Plaintiff has a serious medical illness.

2

1   arose out of a client's complaint that Plaintiff had not met a processing deadline in her case.  Before

2   going on vacation in March of 2006, Plaintiff informed Pratt that she would not meet the deadline

3   in the case.  Pratt instructed Plaintiff to meet the deadline before leaving for vacation.  Plaintiff had

4   hoped that Pratt would do the work to meet the deadline for Plaintiff and went on vacation without

5   meeting the deadline.  The client then complained, and Pratt subsequently gave Plaintiff a negative

6   evaluation for her handling of the case.

7        When Plaintiff returned from her FMLA leave in late April of 2006, she requested

8   additional time to conduct interviews.  Pratt perceived Plaintiff's request as a request for a special

9   accommodation relating to a medical disability.  As a result, Pratt notified the Personnel Officer,

10  who then sent Plaintiff an "Essential Functions Questionnaire."  Plaintiff did not complete the

11  questionnaire and made no further requests for additional time to conduct interviews.

12       In May of 2006, Plaintiff filed a discrimination complaint with the State of Nevada.  The

13  complaint alleged that Pratt retaliated and discriminated against Plaintiff for using FMLA leave.

14  After conducting an investigation, the State concluded that Plaintiff's claims could not be

15  substantiated.

16       On August 8, 2006, Plaintiff requested that the Division transfer her to the Carson City,

17  Nevada, office so that she could be closer to her ailing father.  The Division denied her request

18  because the person who interviewed Plaintiff for the position concluded that Plaintiff was not a

19  "team player."  However, in July of 2007, the Division did transfer Plaintiff to the Carson City

20  office.

21       In September of 2006, one of the three Family Services Specialists in the Winnemucca

22  office resigned, and the Division decided not to fill that position.  In October of 2006, Pratt retired.

23  Plaintiff applied for Pratt's position, but was not selected.  Instead, Defendants did not fill Pratt's

24  position and had Jeanine Trujillo ("Trujillo"), the Ely office supervisor, supervise the Winnemucca

25  office from the Ely office.  In August of 2007, Trujillo denied Plaintiff's request for annual leave

26

1  because Plaintiff was not current on her workload.  Trujillo later approved Plaintiff's request for

2  leave.

3  **II.    Legal Standard**

4        Summary judgment is appropriate only when "the pleadings, depositions, answers to

5  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

6  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

7  law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

8  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

9  to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

10  587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

11        The moving party bears the burden of informing the court of the basis for its motion, along

12  with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

13  477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party

14  must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

15  find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

16  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

17        In order to successfully rebut a motion for summary judgment, the non-moving party must

18  point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

19  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might

20  affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

21  242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

22  judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute

23  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could

24  return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a

25  scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine

26

1  dispute; there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at

2  252.

3  **III.   Discussion**

4          Plaintiff's complaint alleges the following six causes of action: (1) interference with the

5  exercise of her FMLA rights; (2) deprivation of her rights under the Fourteenth Amendment to the

6  United States Constitution; (3) deprivation of her due process rights under the Nevada State

7  Constitution; (4) violation of her rights under Chapter 284 of the Nevada Revised Statutes; (5)

8  intentional infliction of emotional distress; and (6) declaratory relief.  The court will address the

9  relevant alleged violations below.[3]

10         **A.  Interference with the Exercise of FMLA Rights[4]**

11         The FMLA provides that an eligible employee shall be entitled to twelve workweeks of

12  leave during any twelve-month period due to the birth of a child, adoption, to care for the spouse,

13  son, daughter, or parent of the employee, or because of a serious health condition that makes the

14  employee unable to perform the function of his or her position.[5]  29 U.S.C. § 2612.

15         Plaintiff first alleges that Defendants interfered with the exercise of her FMLA rights.  It is

16  unlawful for an employer to "interfere with, restrain, or deny the exercise of or the

17  ───────────────────────

18         [3] In their motion for summary judgment, Defendants fail to address Plaintiff's fourth and sixth claims
    for relief.  While it is questionable whether Count Six states a claim upon which relief can be granted, because

19  Defendants fail to address the claims, both claims survive the motion for summary judgment.

20         [4] Both parties appear to confuse the appropriate cause of action under the FMLA and mistakenly argue
    that Plaintiff has asserted a retaliation claim.  The FMLA provides for the following three separate causes of

21  action: (1) interference; (2) retaliation; and (3) discrimination.  The Ninth Circuit has made clear that
    complaints alleging adverse employment actions taken against employees because they have used FMLA leave

22  should be construed as claims of interference, not retaliation or discrimination.  *See Bachelder v. American
    West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001).

23         Here, Plaintiff alleges an interference claim.  Count One does not allege that Defendants retaliated
    against Plaintiff for *complaining* about the unlawful leave policies.  Instead, Count One states that Defendants

24  retaliated against Plaintiff for *taking* FMLA leave.  As a result, the court treats Count One as an interference

25  claim.

26         [5] Defendants do not dispute that Plaintiff is an eligible employee with a serious health condition.

attempt to exercise, any right provided under the FMLA." 29 U.S.C. § 2615(a)(1).  Section
2615(a)(1) prohibits an employer from using FMLA-protected leave as a negative factor in an
employment decision. *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.
2001).  To prevail on an interference claim, a plaintiff "need only prove by a preponderance of the
evidence that her taking of FMLA-protected leaves constituted a negative factor in [an adverse
employment decision]." *Id.* at 1125.

Defendants argue that they did not consider Plaintiff's taking of FMLA leave as a negative
factor in an employment decision.  Plaintiff counters that Defendants did use her taking of FMLA
leave as a negative factor in several employment decisions.  Specifically, she argues that after she
used FMLA leave, Defendants did the following: (1) assigned her to a disproportionate number of
complex cases; (2) refused to give her adequate time to interview clients; (3) revealed to co-
workers her medical condition; (4) denied her requested leave; (5) denied her request to transfer to
another office; (6) denied her application for a promotion; and (7) issued a negative performance
evaluation.  The court will discuss each of these incidents below.

### 1.    Assignment to Complex Cases

Plaintiff asserts that in 2003 and in April of 2007, as a result of her taking FMLA leave,
Defendants assigned her a disproportionate number of complex cases.  The assignment of cases in
2003 occurred before Plaintiff applied for FMLA leave.  Therefore, the 2003 assignments are not
causally related to her taking FMLA leave.

With regard to the assignment of complex cases in April of 2007, Plaintiff admits that
Defendants assigned her the cases because her co-worker could not handle the cases correctly and
Plaintiff had the ability to handle the cases.  (Mot. for Summ. J. (# 28), Ex. 1 at 86-89.)  At the
time, Plaintiff and the co-worker were the only caseworkers in the Winnemucca office.  This
indicates that Defendants had a legitimate reason, unrelated to Plaintiff's taking of FMLA leave, to

1   assign Plaintiff the complex cases.  Plaintiff has failed to provide any evidence rebutting or calling

2   into question Defendants' justification

3          Further, Defendants assigned the cases in April of 2007, several months after Plaintiff used

4   just one day of FMLA leave in January of 2007, and a year after Plaintiff began using FMLA leave

5   in April of 2006.  Temporal proximity alone is generally insufficient to create a genuine issue of

6   material fact on the issue of causation.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273

7   (2001).  To present sufficient evidence of causality, the temporal proximity must be "very close."

8   *Id.* (citing cases finding that a three or four month period was insufficient to prove causation).

9   Here, at least three months lapsed between Plaintiff's use of one day of FMLA leave and the

10  assignment of complex cases.  Moreover, nearly a year lapsed between Plaintiff using a significant

11  number of FMLA-leave days and the assignment of complex cases.

12         Because of the lack of temporal proximity and any other evidence indicating that

13  Defendants assigned the cases because Plaintiff took FMLA leave, the court finds that Defendants

14  have demonstrated that there is no genuine issue of material fact as to the causal relationship

15  between the assignment of complex cases and Plaintiff's use of FMLA leave.  As a causal

16  connection is an essential element of Plaintiff's interference claim, and one for which Plaintiff

17  carries the burden of proof, Plaintiff cannot defeat summary judgment on these grounds.

18                    **2.     Refusal to Provide Additional Time to Conduct Interviews**

19         Plaintiff next asserts that, as a result of her taking FMLA leave, Defendants refused to

20  provide her with the additional time needed to conduct interviews.  On May 12, 2006, Plaintiff

21  emailed Defendant Pratt, stating that since returning from her FMLA leave, she had not been able

22  to complete her work as quickly and that her concentration had suffered.  As a result, Plaintiff

23  requested additional time to conduct her interviews.  Defendant Pratt interpreted the email as a

24  request for a special accommodation due to a disability.  Defendant Pratt therefore ensured that

25  Plaintiff received a Special Accommodations Questionnaire, which would help the Department

26

                                                    7

determine whether and to what extent special accommodations were necessary.   Upon receiving

the questionnaire, Plaintiff denied wanting a special accommodation and made no further requests

for additional interview time.

The evidence does not indicate that Defendants in fact denied Plaintiff's request for

additional time to conduct interviews.  Instead, they took the appropriate steps to comply with law

and see that Plaintiff's needs were met.  Plaintiff denied needing assistance.  Defendants have

demonstrated that there is no genuine issue of material fact concerning whether Defendants denied

Plaintiff's request for additional interview time.  To succeed on her claim, Plaintiff must who that

Defendants used FMLA leave as a negative factor in an employment decision.  Here, there was no

employment decision because Defendants did not deny Plaintiff additional interview time.  Thus,

Plaintiff cannot defeat summary judgment on this basis.

### 3.        Disclosure of Medical Condition to Co-Workers

Plaintiff also states that Defendant Pratt wrongfully disclosed information about her medical

condition.  Specifically, Plaintiff points to an incident when Defendant Pratt had the receptionist

mail Plaintiff's doctor's note back to Plaintiff.  The court agrees with Defendants that as a matter of

law, returning a doctor's note is not the type of adverse employment action against which the

FMLA is intended to protected employees.  Thus, Defendant Pratt did not use FMLA leave as a

negative factor in an employment decision.  As a result, Plaintiff cannot defeat summary judgment

on this basis.

### 4.        Denial of Leave

Plaintiff next argues that as a result of her taking FMLA leave, Defendants denied her

annual leave.  In August of 2007, Plaintiff requested annual leave.  Her supervisor denied the

request because Plaintiff was behind on her work.  The FMLA does not entitle an employee to

additional benefits to which the employee would not otherwise have been entitled.  29 U.S.C. §

2614.  Defendants have provided a legitimate reason for the denial of annual leave, and Plaintiff

8

1   has offered no evidence rebutting this showing.  Defendants have thereby demonstrated that there is

2   no genuine issue of material fact concerning whether the denial of annual leave was causally related

3   to Plaintiff's use of FMLA leave.  As a result, Plaintiff cannot defeat summary judgment on this

4   basis.

5               **5.      Denial of Transfer**

6           In August of 2006, Plaintiff requested a transfer to the Carson City office.  Barbara Taylor

7   ("Taylor"), the supervisor of the Carson City office, interviewed Plaintiff for the position.  Based

8   on this interview, Taylor concluded that Plaintiff should not transfer to the Carson City office

9   because Plaintiff was not a team player.  Taylor came to this conclusion after asking Plaintiff what

10  she would do if she received a case containing errors from another worker.  Plaintiff stated that, if

11  she had a good relationship with the other worker, she would discuss the errors.  This concerned

12  Taylor because she felt that a professional would not let her emotions or opinions interfere with

13  assisting other team members.  When she denied Plaintiff's request to transfer, Taylor did not know

14  that Plaintiff had used or requested FMLA leave.

15          Because Taylor was solely responsible for the decision to transfer Plaintiff and because she

16  had no knowledge of Plaintiff's use of FMLA leave, Defendants have demonstrated that there is no

17  genuine issue of material fact as to the causal connection between Plaintiff's FMLA-protected

18  rights and the denial of her transfer.  Plaintiff has failed to point to additional evidence indicating a

19  causal link between the two.  As a result, Plaintiff cannot defeat summary judgment on this basis.

20              **6.      Denial of Promotion**

21          When Defendant Pratt retired in October of 2006, Plaintiff applied to fill her position as the

22  supervisor of the Winnemucca office.  However, because the Winnemucca office had been reduced

23  to only three employees, the Department decided not to fill Defendant Pratt's position.  Instead, the

24  Department had the supervisor of the Elko office supervise the Winnemucca office.  Plaintiff states

25  that Defendants sought a supervisor for the Winnemucca office after Plaintiff transferred to the

26

Carson City office in December of 2007.  Defendants deny ever seeking a supervisor to replace

Defendant Pratt at the Winnemucca office.

Defendants have provided a legitimate reason, unrelated to Plaintiff's use of FMLA leave, for denying Plaintiff the promotion.  Even if Defendants sought a supervisor for the Winnemucca office in December of 2007, the temporal proximity between Plaintiff's use of FMLA leave and December of 2007 is too remote to establish a causal connection.  Thus, Plaintiff has failed to rebut Defendant's evidence and bring forth evidence demonstrating a genuine issue of material fact concerning whether the denial of her promotion was causally related to her use of FMLA leave.  As a result, Plaintiff cannot defeat summary judgment on this basis.

### 7.    Negative Evaluation

Finally, Plaintiff asserts that she received a negative evaluation because she took FMLA leave.  On April 26, 2006, Defendant Pratt issued Plaintiff a "negative case review."  The negative review arose out of a client's complaint that Plaintiff had not met a processing deadline in her case.  Before going on vacation in March of 2006, Plaintiff informed Pratt that she would not meet the deadline in the case.  Pratt instructed Plaintiff to meet the deadline before leaving for vacation.  Plaintiff had hoped that Pratt would do the work to meet the deadline for Plaintiff and went on vacation without meeting the deadline.  The client then complained, and Pratt subsequently gave Plaintiff a negative evaluation for her handling of the case.  Plaintiff admits that Pratt handled the situation properly.

While *undeserved* negative employment evaluations may qualify as adverse employment actions, *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (emphasis added), the use of FMLA leave does not insulate Plaintiff from employment actions to which she otherwise would have been subject.  Plaintiff has failed to provide evidence indicating that Defendants were motivated by her use of FMLA leave in issuing the negative evaluation.  Instead, the evidence indicates that Plaintiff's failure to complete her work arose out of her use of vacation time, rather

than FMLA leave.  Thus, Defendants have demonstrated that there is no genuine issue of material fact as to the causal relationship between Plaintiff's use of FMLA leave and the negative evaluation.  As a result, Plaintiff cannot defeat summary judgment on this basis.

### 8.   FMLA Conclusion

Defendants have demonstrated that there is no genuine issue of material fact concerning the causal connection between the above-cited actions and Plaintiff's use of FMLA leave.  As a result, summary judgment as to Plaintiff's FMLA interference claim is appropriate.

### B.  Due Process Violations

Plaintiffs second and third claims for relief allege that Defendants denied her the right to due process of the laws under the Fourteenth Amendment to the United States Constitution and under the Nevada Constitution, respectively.  However, in her Opposition to Defendants' Motion for Summary Judgment, Plaintiff does not address the alleged constitutional violations.  To successfully rebut a motion for summary judgment, the non-moving party must point to specific evidence indicating that there is a genuine issue of material fact.  *Reese*, 208 F.3d at 738.  Here, Plaintiff has pointed to no such evidence.  As a result, summary judgment on Plaintiff's constitutional claims is appropriate.

### C.  Intentional Infliction of Emotional Distress

Plaintiff's fifth claim for relief alleges intentional infliction of emotional distress.  To establish a claim for intentional infliction of emotional distress, a plaintiff must show the following: (1) the defendant engaged in extreme and outrageous conduct with either the intention of, or reckless regard for, causing emotional distress; (2) she suffered severe or extreme emotional distress; and (3) actual or proximate causation.  *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981) (*citing Cervantes v. J.C. Penney, Inc.*, 595 P.2d 975 (Cal. 1979)).  Extreme and outrageous conduct "is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'"  *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citations

11

1  omitted).

2      In this case, Defendants argue that none of the alleged conduct rises to the level of extreme

3  and outrageous conduct.  Further, they argue that Plaintiff cannot demonstrate that she suffered

4  "severe emotional distress" caused by Defendants' conduct.  In opposition, Plaintiff argues that

5  Defendant Pratt knew that stress aggravated her medical condition, and that Defendant Pratt

6  intentionally engaged in conduct that increased Plaintiff's stress and thereby aggravate her medical

7  condition.

8      The court finds that Plaintiff has failed to present evidence demonstrating a genuine issue of

9  material fact as to whether she suffered severe emotional distress as a result of Defendants'

10 conduct.  Plaintiff presents no evidence of medical or psychiatric harm arising out of the alleged

11 incidents.  Moreover, neither Plaintiff's complaint nor her opposition appear to allege that she

12 suffered from severe emotional distress.  In her opposition, Plaintiff states that "the doctor's note

13 indicated that stress required [her] to take time from work to manage her illness."  (Opp'n to Mot.

14 for Summ. J. (# 28) at 10.)  However, the note from Dr. Scully does not state that Plaintiff suffered

15 from stress.  As a matter of law, Plaintiff has not demonstrated a genuine issue of material fact as to

16 whether she suffered severe emotional distress.  Summary judgment is therefore appropriate.

17 **IV.   Conclusion**

18     Defendants have shown that there is no genuine issue of material fact and that they are

19 entitled to judgment as a matter of law on Plaintiff's FMLA interference, constitutional, and

20 intentional infliction of emotional distress claims.  The court will therefore grant the motion for

21 summary judgment as requested in this order.  Because Defendants have failed to address

22 Plaintiff's state employment law claim and Plaintiff's request for declaratory relief, these claims

23 will survive the motion for summary judgment.  However, because all federal claims have been

24 dismissed, the court will not retain supplemental jurisdiction over Plaintiff's state employment law

25 claim and request for declaratory relief.

26

12

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#25) is hereby GRANTED as reflected in this order.

The court declines to retain supplemental jurisdiction over Plaintiff's state employment law claim and request for declaratory relief.

The Court Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

DATED this 6th day of October, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE